Afternoon and Ray, the marriage of Kremitzki for the appellant, Mr Wrigley. Is that the right pronunciation? And for the athlete, Mr Wright, you may proceed. May it please the court, my name is Ryan Wrigley. I'm here on behalf of the appellant petitioner, Alan Kremitzki. Today we're here to decide the appropriateness of the court's decision to dismiss Mr Kremitzki's petition as time barred and the court's ruling that it did not stand in a position to override the determination of the Office of Personnel Management that Mr Kremitzki's former wife was entitled to share an apportion of disability retirement benefits. The facts of this case are relatively straightforward. Mr and Mrs Kremitzki were divorced in June of 2003 when both were age 50 and at the time Alan was a technician for the Air National Guard. At that time he was accumulating a pension through the Federal Employees Retirement System. The marital settlement agreement was incorporated into the party's judgment for dissolution provided for the division of the party's pensions and other retirement accounts but it was silent on the issue of whether or not disability benefits were meant to be divided. The marital settlement agreement was also accompanied by a Federal Employees Retirement System order which was in essence supposed to be a qualified domestic relations order which would be submitted to the Office of Personnel Management and at that time Mr Kremitzki went into pay status they would use that order interpreted to divide his benefit with Mrs Kremitzki in accordance with the terms with the marital settlement. Several years passed and then in August of 2003 Alan became disabled. He was diagnosed with obstructive sleep apnea. He was medically disqualified for worldwide duty and honorably discharged from the Illinois National Guard. Then he was placed on disability retirement pursuant to a special provision that was there for National Guard technicians under Public Law 97-253 and at that time, age 54, Alan began receiving a disability retirement annuity. Nearly a year later Alan got a letter from the Office of Personnel Management which stated that they had approved his ex-wife's petition or application for a portion of his disability retirement benefit. That meant that she was entitled to roughly $10,000 for the year in which Alan had been receiving the benefit but she had not and that meant that Alan had been overpaid roughly $10,000 and so he was forced to then pay back to the government in about $168 a month, the amount that was overpaid. At that point Alan filed a petition to modify and in that petition he essentially pledged for three separate forms of relief. One, he wanted a termination of his maintenance obligation on the basis that she was residing with the third party on a residence on an incongruous basis and on the grounds that his major source of income, that being the income from his employment as a technician with the International Guard, was now gone and the disability benefit he was receiving was being split with Mrs. Brometsky. He also asked the court to make a determination that she was not entitled to share his disability retirement benefit pursuant to the terms of her dissolution and he asked or prayed for an order requiring Mary to repay the sums that she had received to date from his disability retirement. The petition that Alan filed following extensive briefings by both parties to the court on the issue of whether or not the marital settlement was revised for the division of disability benefits, it was dismissed by the trial court as being time barred. Now the trial court doesn't state an express rationale in its opinion, but I can presume that it was basing it on section 1230, or yeah, 1203A of the Illinois Code of Civil Procedure and the court also ruled that it was not in a position to override OPM's interpretation of their own rules. So the issues presented in this appeal are one, whether or not the petition is time barred and also whether or not the court, the trial court, stands in a position to Mrs. Geidel is in a position or is entitled to share in Mr. Kremetsky's disability retirement benefits. First issue I'd like to address is whether or not the petition is time barred and Mr. Kremetsky adamantly insists that this petition is not time barred. My first contention with this decision by the trial court is that it presupposes that Mary is entitled to receive disability retirement benefits under the judgment for dissolution of marriage and nothing in the judgment states that disability benefits are to be divided and for this petition to be seeking a modification of the marital settlement, it would have to first be established that she was entitled to receive those benefits under the marital settlement and Allen argued that she was not entitled. Both the MSA, marital settlement agreement, and the order that was submitted to the Federal Employee Retirement System said nothing about disability retirement. In fact, the division, the portion of the marital settlement agreement that divided his FBRS benefits was under the section division of retirement and it's stated that Mrs. Geidel was entitled to 50 percent of all benefits including Allen's name through the FBRS, payable at age 55 for retirement. He argued to the trial court that under Illinois law, the pension plan provides both retirement and disability benefits and the marital settlement agreement is benefits. Then the parties didn't intend disability benefits to be divided. It would be improper to do so unless the employee's spouse was continued to receive disability retirements once they got to retirement age and basically elected to receive disability retirements in lieu of retirement benefits. Well, I mean he rested his decision based on three cases, in-ray marriage of Bell out of the second district, in-ray marriage of Davis, and in-ray marriage of Schurz. But the trial court never issued a decision on that issue, never addressed whether or not he wasn't whether or not the marital settlement entitled him to disability benefits or entitled Mrs. Gomeski to share in disability benefits. Rather, the court instead punted on the issue and ruled that the motion was time barred and that the motion or the court did not stand in a position to overturn OPM's determination. Well, what did the original ruling was not ambiguous? I don't believe that the trial court ever addressed the issue of whether or not his benefit was a disability benefit. I believe that it found that based on the terms OPM's determination was not unreasonable, but I don't think that OPM stood in a position to interpret Illinois law. Well, the marital settlement agreement says all benefits, right? Well, in the case of Mr. Gomeski, if he began receiving these, they are designated as disability retirement benefits, not special disability benefits, but disability retirement benefits. And they accrue to him because of his position as an employee who has maintained a certain degree of consistency with the system, whether they use words like he gets disability retirement and he'll later receive full retirement benefits at a later age. Well, I believe that the benefit that he was receiving was definitely a disability benefit. Why do they call it a disability retirement benefit? I believe because it's administered through the Federal Employees Retirement System, but I believe it's definitely a disability benefit when you look at the characteristics of it and the fact that he doesn't reach or he's not eligible for retirement until age 62. The minimum retirement age is 55 years, 10 months. He started receiving this benefit when he was 54 years old. He had to prove that he was precluded from working numerous other jobs in the government before he could be entitled to get this benefit. And should he recover from his disability, the benefit would cease. And I think that most tellingly of all this is that he's still accumulating years of credible service towards retirement at age 62 while he's receiving his disability benefit. And OPM's own regulations, I think, kind of support this position because it says in Appendix A to Subpart J of Part 838 of Title V of the Federal Regulations that OPM will not divide disability retirement benefits when such would be contrary to state law unless the order expressly directs division of disability benefits. And I think that nowhere was it stated in either of the orders that there was supposed to be division of disability benefits. And I believe that dividing disability benefits under the provisions that provide for the provision of retirement benefits is contrary to Illinois state law. And I provided precedent to the trial court on that issue, but they did not render a decision. Instead, like I said, they chose to dismiss the petition as time-barred and they chose to say that they lacked the authority to overturn OPM's determination. I mean, in essence, he wasn't asking for a modification of the marital settlement. He was asking for a determination that the marital settlement agreement did not provide Mrs. Kremesky with 50 percent of his retirement disability benefit. And he didn't need to modify the marital settlement agreement to do this. A clarifying order could have achieved this or, as Mr. Lipsky, I think, was attempting to do, a modification of the FERS order could have achieved this to clarify that disability retirement benefits were not intended to be divided and to provide additional direction to OPM. And I think there's a broad reservation of jurisdiction clause that's found in the FERS order, which allows, grants the trial court jurisdiction to hear his order. I mean, it states that this court also reserves jurisdiction to amend the provisions of this order, even after it has been determined to be a court order acceptable for processing. Determinate or suspend payment of benefits to the former spouse as a result of attainment of a certain age, emancipation, change of custody, or other events justifying a change of payment. Or to modify the order to deal with any unforeseen tax consequences or other effects of this order. I mean, these parties were using the reserve jurisdiction approach. They had no, they didn't know the value of the pension at the time or any of the benefits he was going to receive for the rest of the time of the dissolution. So they reserved jurisdiction to determine that at a later time under the FERS orders to submit. That FERS order isn't going to be interpreted until some years later when he goes into pay staff. So they need to reserve a broad jurisdiction beyond the, you know, traditional 30 days in case that order has some unintended consequences. And I think that the division of Mr. Kremeski's disability retirement benefits is an unintended consequence of the marital settlement and FERS order that fits squarely within the scope of the reservation of jurisdiction provision. The reservation of jurisdiction, I mean, I think to determine the scope of it, I mean, the law I cited was Rigando versus Republic Steel Corporation, which is basically just pretty straightforward. It says you need to look at the scope of what's written on the corners of the order, and this is a very broad reservation of jurisdiction provision. And I think that what occurred, the per receiving a portion of his disability retirement benefits, fits squarely within events justifying a change in payment to the unforeseen other effects of this order that are reserved, that, you know, the court has reserved jurisdiction to correct unintended consequences of this order. And I mean, it just, there's a practical consideration in the sense that he had no clue that this dispute existed until five years after the order was entered. And then to say that it's time, his motion is time-barred because he didn't bring it within 30 days. Well, he had no clue that this sort of unintended consequence would arise. So he couldn't have brought his petition, and he brought it as soon as he was aware. The second issue is whether or not the court can override OPM's determination that Mrs. Geidel is entitled to receive a portion of the disability retirement benefits. I mean, the answer to this question, I think, lies in Title V of the Federal Regulation, specifically Sections 838, which govern court orders affecting federal employee retirement system benefits. I mean, it states in the provisions of those regulations that OPM's duties are purely ministerial, that OPM's only responsibility is authorizing payments in accordance with all of our court order acceptable for process, and it's the onus on the trial court to issue clear, specific, and express instructions to OPM. And it is the responsibility of the State Court to settle all disputes that arise based on OPM's interpretation of these orders. I mean, OPM tells employees and former spouses, you are supposed to go to the trial court to resolve this, the state trial court. We will not resolve this. There are no appeal rights through OPM or the Merit System Protection Board, and OPM will not hear any dispute with regard to application of its rules. And so he has nowhere else to turn but the trial court. He turns to the trial court to try and correct this wrong, and the trial court tells him, no, your petition is time-barred because he didn't bring it within 30 days, but he didn't know about this until five years later. There's no way he could have brought it within 30 days. I believe that Mr. Kaminsky has a legitimate dispute with his ex-wife over whether or not OPM is correctly interpreting and applying their rules to his case. I mean, it specifically says in their rules, OPM will not divide disability retirement benefits in such a division would be contrary to state law unless the order expressly directs the vision of disability benefits. I believe, and I cite it to the trial court, that it is contrary to element state law to divide disability benefits pursuant to the terms of a marital settlement agreement that are dividing retirement benefits when those provisions have no language addressing disability benefits. What case did you cite to the trial court? I cited three cases to the trial court. In re marriage of Belt, which is 239 Hillap 3rd 806. That was a 1992 case out of the second district. Cited in re marriage of Davis, which is 286 Hillap 3rd 1065, a third district case from 1997. And Irmo in re marriage of Schurz, which is a You didn't cite those to us? Because I didn't believe that the issue of what was presented before this court. I would have that I believe that that issue was addressed by the trial court. But Irmo Schurz was 238 Hillap 3rd 1123, a third district case from 2008. In conclusion, I think that Allen's petition is not time-bound. Mr. Kremetsky was seeking to change the determination of OTM to get a determination from the trial court that the marital settlement agreement did not provide for a division of the disability retirement benefit. He wasn't asking to modify the marital settlement agreement did not provide for the visions of disability retirement benefits. There was a broad reservation of jurisdiction provision in the FBRS order where they granted them the right to modify that order during unforeseen circumstances. And I believe that Mrs. Geigel receiving a portion of the disability benefit is an unintended consequence of that order, which brings it squarely within the reservation of jurisdiction provisions found in the marital settlement agreement does not have to be amended. Simply, the FBRS order needs to be amended so that it can provide further direction to OPM to clarify for them that disability benefits were not intended. The trial court also has the authority to override OPM's determination that Mrs. Kremetsky or Mrs. Geigel is entitled to a portion of his disability retirement benefits. Everything in their regulation says go to the trial court, ask the trial court, they will resolve your decision. Mr. Kremetsky went to the trial court and the trial court said we can't resolve your decision because we don't stand in a position to override their determination. So there he's stuck in a no-win situation. He can't look to OPM for help and he can't look to the trial court. I do want to go back to, I want to know what Judge Nardulli meant by the fact that there's no ambiguity here. If I read that, it means to me he thinks you're all wet, plus I don't have jurisdiction. Well, I don't agree. Then flesh it out for me. What was he saying? I do not agree with this decision that it was not reasonable, but I don't believe that this decision was based on that statement. He never made a determination. What did he mean? It meant nothing then? Apparently he thought that all benefits meant all benefits, I guess is what I can take from that. But I don't believe that that determination is correct. I think there's ample precedent to the contrary and I think that his decision did not rest on that statement. Had his decision rested on that statement, I would be in front of this appellate court making a different argument. Okay. Thank you, Your Honor. Thank you, counsel. May it please the court. Good afternoon. My name is Dan Wright, appearing on behalf of Appellee Mary Lynn Ketel. If I could just distill the three issues that were raised on appeal, which were all referenced by counsel for the appellant. Number one is the lack of jurisdiction that was asserted by the trial court in respect to modification of the judgment because more than 30 days had passed. No facts were alleged to, I think it's undisputed, that no facts were alleged to give rise to relief from the judgment under a separate provision of the Code of Solute Procedure. Second is whether, even if the court finds that there was a lack of jurisdiction based upon the passage of time, does the doctrine of revestment apply, which would revest the court with jurisdiction despite the passage of time? And the third was the court's deference to OPM in accordance with Illinois law that provides that a state court should defer to federal agencies' reasonable interpretation of its own rules. And I'll take each of those in turn. The issues on appeal don't concern whether the court appropriately determine the issue of whether there was an express cutout for disability retirement benefits or whether all, in fact, means all or whether, you know, on the merits of that issue. That was not the basis of the court's decision and was not raised on appeal. However, a very interesting issue that I think there isn't any Illinois law directly bearing on that issue. There's some Texas case law that was cited in the trial court briefs, if the court's so inclined to review those. However, issues aren't raised on appeal, so we're here today to discuss the three issues that I mentioned. The lack of jurisdiction in modified judgment, the court found that it was without jurisdiction because of the passage of time, and 750 ILCS 5-510B, the section of the Marriage and Dissolution of Marriage Act, provides that provisions which constitute property disposition or settlement of property are generally not subject to modification after the judgment becomes final. And that's what happened in this case. The two orders that the appellant relies upon, to use a crude analogy, sort of ignore the elephant in the room, which is the final judgment. Those orders are entirely reliant upon and arise from the final judgment. And if the court were to award the relief requested in the interpretation of those orders, that relief substantially alters the rights and obligations of the parties as established by the final judgment. And that's inconsistent with Illinois law. Secondly, the doctrine of revestment. So even if the court were to agree with us, or to agree with Mary Lynn and find that there was no jurisdiction based upon the passage of time, but in fact there was participation in the proceedings without objection, which is the first element of revestment, and that the proceeding was inconsistent with the merits of the prior judgment. Neither of those are present in the current matter for the following reasons. Mary Lynn did in fact participate in the trial court proceedings. However, she objected on multiple occasions, as cited in our brief, but specifically December 17, 2009 and January 7, 2009, there were jurisdictional objections in the brief, specifically stating that granting the requested relief would constitute an impermissible post-judgment modification. So clearly Mary Lynn strenuously and vehemently objected to jurisdiction in the trial court. Secondly, the proceedings must have been inconsistent with the prior judgment. The authority cited in our brief, specifically the Gleason case, provides that in order for the second element of revestment to be present, there must be established some conduct by one of the parties that was inconsistent with the prior judgment. At no time during the trial court proceedings did Mary Lynn take a position that was inconsistent with the prior judgment. She in fact objected to jurisdiction, and so that element is not present. And as I said, the first element of revestment was not present because she did in fact object on more than one occasion to jurisdiction. What does paragraph 11 of that June 6th order mean? It says the court reserves jurisdiction. Is that the first order, the federal? June 6th, 2007. The reservation of jurisdiction to provide for unintended consequences or issues that arise in the interpretation of the order by the federal agency was intended, in my judgment, by the trial court to allow for changes in the order, not the underlying judgment, but changes in the order to allow the relief agreed by the parties and stated in the final judgment, but not to modify the provisions of the judgment. The reservation of not modification. But I think that language was... Well, let me ask counsel, wouldn't the court have been entitled to enforce the judgment without that language? Without the reservation of judgment? I believe that's true. So then what's the point of the language? It may in fact have been superfluous. However, I don't believe that the inclusion of that language suggests that because the court reserves the right to enforce the judgment, that that would imply that it reserves the right to modify the judgment later after the passage of time. Well, as opposed to superfluous and meaningless, on the one hand, which is what you're suggesting, and on the other hand, maybe the court wants to take another look at this down the line. Well, if the court intended to reserve jurisdiction to later modify the judgment, I believe it would have expressly stated as such. It did not. What did it say? In the judgment itself, it reserved jurisdiction to enforce the judgment. There was no reference to reservation of jurisdiction to modify. The words to enforce the judgment are present? I'm sorry, Your Honor. The words to Let me clarify. I don't want to swear to this without seeing the language. Your Honor, page 11 of our brief is what I'm referring to. The judgment from which Maryland's entitlement to abortion of all of FERS retirement benefits arose states plainly and unambiguously, quote, the court hereby expressly retains jurisdiction of this cause for the purpose of enforcing the terms and conditions of this judgment. So that statement, or elsewhere in the order, does not under any circumstances preserve jurisdiction to modify the judgment. And that's our position. The subsequent orders can't stand without the underlying judgment, and so any interpretation of substantial, can't be interpreted, interpreted, excuse me, in a way that would substantially alter the party's rights and obligations under the judgment. Did the judge now duly enter both orders, both the original order and the one before us now? Your Honor, I believe so. I'm not, I'm not entirely certain on that. I can check the Did he explain what he meant by jurisdiction for the purpose of enforcement? The, the judgment doesn't explain the hearing where he denied the request to modify. I imagine this subject came up, what did that language mean? I'm wondering if he addressed that directly. Your Honor, I wasn't present at the hearing, and I don't recall whether the record reflects any explanation. I can't honestly say that. So, but the third issue being the court's refusal to, as requested, override the interpretation of OPM of its own regulations. And Illinois law is well settled, it's a Weatherman case, that the trial court defers to federal agencies and reasonable interpretation of its own regulations. And this, Justice Connick, I believe refers to, dovetails nicely with your question about what did it mean when, when Judge Nardulli said that he believed the order was, was unambiguous. Although OPM's duties are not to add or subtract from, from the order, they, they have to read and interpret the, the court's, the court's decision, the court's, the court's order. They in fact did that, and they found it was clear and ambiguous. Judge Nardulli found it was clear and ambiguous, all means all. And, and I think that's what he meant, that there's, that he drafted a clear and ambiguous order, it was interpreted by OPM. They took his language and interpreted it in light of their own regulations, and, and reached a decision that, that he was not in a position to, to override based upon Illinois law that requires him to, to afford deference to a reasonable interpretation of a federal agency's regulations, which is exactly what happened in this case. And I don't believe that at the trial court there was any suggestion by the appellant that, that OPM's interpretation was, was not, just that it somehow contradicted Illinois law. Would it be, this Farrer's order is the equivalent of, in domestic relations practice, a qualified domestic relations practice, but it's used in, in this setting, and as you're a federal employee. Would it be true, or has it been your experience that orders like this, as well as Quilgroves and Quadroves, are sort of boilerplate orders that have been created over the course of the last, I don't even know what it is, decade and a half plus, for entry in family law cases, and they, a lot of them have similar language? Here, I think... You can't speak to that, that's okay, but I'm just wondering if... I'm not a, an exclusive domestic relations practitioner, but I will say that I think that often the first drafts of those are pretty boilerplate, but depending upon the circumstance to which they're submitted, I think there are attorneys in our office that, depending upon the entity to which the Quadro is submitted for approval, they have their own specific provisions they like to see entered, and so they can often take a variety of different forms, but, and there's no dispute that, for example, I believe the court is correct that this is analogous to a Quadro situation, and Quadroves, under Illinois law, can, be modified well after the expiration of 30 days after a final judgment to conform to the underlying judgment, and that's not a situation where they would be altering the rights of the parties, but just conforming... I understand this is anecdotal, but I think you said that the order gets modified, not necessarily to preserve the rights of the parties, but it gets modified to suit the prerequisites of the entity that will be paying off the pension benefits. Did I, did you say it's not quite that way, but depending on what entity it's being submitted to, that's where the variations come in. Well, I think the, I think variations come in, not, and again, I'm not an expert on this, but, but the... I'm trying to get educated. Sure, sure. I think the variations come in, perhaps not on substantive provisions that would affect the rights and obligations under the judgment, and that would be inappropriate if an entity suggested a change that would alter the provisions of the judgment, but just perhaps in a more of a procedural sense, just how they like the language to appear. Sort of like the federal, the Fed saying, this is what we like it to look like, and the lawyers that are submitting these orders... Right, the Feds perhaps might reject a first order if they don't like the, or a proposed order, but just as in a if they were, if appellant were seeking to modify the terms of just the order in a manner that did not alter the the rights and obligations of the parties under the judgment, there would be no objection, but it clearly does in this situation. They're asking for a monumental alteration of the of the party's rights and obligations, and that, and their agreement at the time. One point I'd like to address from counsel's argument is that somehow Mr. Kermitsky couldn't have known that he was going to be disabled. Well, perhaps that's true, but there was a unilateral mistake of law at the time, and current counsel for Mr. Kermitsky, I don't believe was involved with this, as a side note, but there was a unilateral mistake of law at the time in that the party is presumed to have knowledge of the universe of his rights at the time, and so he certainly knew that part of his retirement benefits under the first regulations are these disability retirement benefits, and so he's charged with the obligation to include those in this agreement. Though he knows that he's not disabled currently, certainly in an order that's going to have a lifetime impact, he should be charged with the obligation to include the potential for later disability, because that's part of his retirement benefits under the first order. So I don't think he had to have been disabled at the time for him to have been charged with the obligation to include that in the agreement. And if there are no further questions, thank you very much. Rebuttal? First, I'd like to address the unilateral mistake of law issue that he just brought up, saying that the onus is on Mr. Kermitsky to, if he didn't want his disability benefits to be divided, he should have put some language in there accepting, well I think that Mr. Kermitsky should have known what the state of the law was when he was, what the rules of OPM were at that time, and the rules of OPM at that time were, if it doesn't state expressly disability benefits, then retirement disability benefits are not to be divided. So the onus should have been on Mrs. Geidel to include the word disability in the MS, in the marital settlement agreement, or in the FDRS order. If she did in fact intend those benefits to be divided under the state of the law at the time that these two entered into this agreement. With regard to whether or not under the Weatherman case that the trial court must defer to reasonable interpretations of the federal agency to make up their own rules, well I just don't believe that the interpretation that was made by OPM in this case was reasonable. I mean, I think that they are directly contravening their own stated rules when they, when they state that you are not supposed to divide disability benefits unless it specifically says disability benefits. And to me, it's not reasonable for them to then go get an order, a quadra, or a court order acceptable for processing, and get that, have it nowhere say disability on it, and then divide his disability retirement benefits. I don't think that's a reasonable interpretation of their rules by OPM. I don't think the trial court is bound by that interpretation. I think there's legitimate dispute between these parties as to whether or not this benefit is a disability or retirement benefit, whether or not it was the intent of the parties to include that within the marital settlement agreement. And I believe he's entitled to get a resolution from the trial court on that issue, not to have the trial court dismiss this petition as time bar, and to say, state that it is not in their position to override OPM's I'd also like to address what the court asked counsel with regard to what was the reservation jurisdiction provision in the marital settlement agreement. Pull that out, it's in appendix, and on the appendix to my brief, on page six, and it says, this court rechanged jurisdiction of the matter for purposes of entering and enforcing these rights in accordance with the party's intentions as stated here. Nowhere therein does it state their intention was to divide disability benefits. I believe that's that issue's tossed up in the air. No one knows, and I believe that Mr. Nolten or Mr. Ekremetsky is entitled to its decision from the trial court on that issue, and not to have the issue evaded, and his petition dismissed as time bar, and this petition, and then the court denying that it has any authority to override OPM's determination. And Mr., I'd just like to reiterate that Mr. Ekremetsky is not asking for a modification of the marital settlement agreement. The marital settlement agreement nowhere states disability benefits. He's simply asking the court to determine that based on the language in there, that the parties did not intend to divide disability benefits. I believe that that's the current state of Illinois law, and that was the law that was submitted to the trial court, but the trial court did not make a ruling on that issue, and I believe that if you ruled in our this clause be remanded to the trial court for a determination on the issue of whether or not the parties intended disability benefits to be included within the terms of the marital settlement agreement, I would ask the court to make a determination on whether or not the benefit that he receives is a disability or retirement benefit. Because I mean, while I firmly believe that it is a disability benefit, I find no case law directly on point saying that his disability retirement benefit is in fact a disability benefit. I believe it has all the characteristics of a disability benefit, and that it's intended to be an income replacement and not intended to be a benefit purposes of retirement.